UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| RICK D. WAGNER, | ) | |
| (Social Security No. XXX-XX-0852), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:06-cv-98-RLY-WGH |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION AND ORDER**

**I. Statement of the Case**

Plaintiff, Rick D. Wagner, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on April 4, 2003, alleging disability since November 4, 2002. (R. 48-50). The agency denied Plaintiff's application both initially and on

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue, in his official capacity only, is substituted as the Defendant in this action.

reconsideration. (R. 27-35). Plaintiff appeared and testified at a hearing before Administrative Law Judge George Mills ("ALJ") on January 20, 2005. (R. 299-350). Plaintiff was represented by an attorney; also testifying was a vocational expert and Plaintiff's wife. (R. 299). On April 18, 2005, the ALJ issued his opinion finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 14-23). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 4-6). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on June 16, 2006, seeking judicial review of the ALJ's decision.

## II.  Statement of the Facts

**A.     Vocational Profile**

Plaintiff was 45 years old at the time of the ALJ's decision and had a high school education. (R. 15). His past relevant work experience was that of a carpet salesperson, a mobile home park manager, and a tile salesman; all of these jobs were light skilled jobs. (R. 15).

**B.     Medical Evidence**

On May 8, 2001, Plaintiff reported a history of a back impairment to Matthew B. Kern, M.D.; he had underwent two back surgeries in 1996. (R. 158). Dr. Kern noted cervical and lumbar tenderness as well as reported pain on flexion and extension. (R. 158). However, Plaintiff had normal strength, sensation, and reflexes. (R. 158). Dr.

2

Kern noted that Plaintiff's lumbar MRI indicated degenerative disc disease at L3-4 and L4-5 with bulging discs and minimal right side stenosis. (R. 158). Dr. Kern's impression was that no surgery was necessary and suggested starting physical therapy. (R. 159).

In November 2002, Plaintiff complained of an exacerbation of his back pain. (R. 178). He also complained of neck pain that radiated down both of his arms with paresthesias, pain that radiated into his legs, and headaches that radiated from his neck region into his occipital area. (R. 178). An MRI study of Plaintiff's cervical spine showed a small right paracentral disc herniation at C4-5, but no overt nerve root impingement. (R. 179, 257). An MRI study of Plaintiff's lumbar spine revealed a central disc herniation at L4-5, and a small left-sided paracentral disc herniation at L3-4. (R. 179, 259-60).

In December 2002, Michael McFadden, M.D., documented Plaintiff's complaints of tenderness and reduced range of motion, but he reported normal neurological findings. (R. 174, 179). Dr. McFadden recommended treatment with medications, physical therapy, a transcutaneous electrical nerve stimulation ("TENS") unit, and an epidural steroid injection. (R. 180). Dr. McFadden also ordered an electromyography and nerve conduction study of Plaintiff's arms, which were normal. (R. 180, 183-85). Dr. McFadden administered two epidural steroid injections in December 2002, but Plaintiff reported that the injections did not significantly reduce his pain. (R. 174, 181-82).

Donna Lorenzo-Bueltel, M.D., a neurologist, examined Plaintiff in January 2003 at the request of Plaintiff's treating physician, Richard A. Wagner, M.D. (R. 160-61).

Plaintiff complained of a three- to four-month history of head pain. (R. 160). Dr. Lorenzo-Bueltel documented Plaintiff's complaints of exquisite point tenderness to the left and right occipital regions, but she reported otherwise normal examination findings. (R. 160-61). Dr. Lorenzo-Bueltel diagnosed bilateral greater occipital neuralgia, and recommended bilateral occipital nerve blocks (R. 161); Plaintiff underwent a nerve block by James E. Hobgood, M.D., later that month. (R. 172-73).

At the request of Dr. Wagner, Chester Higdon, M.D., examined Plaintiff in February 2003. (R. 198-200). Plaintiff complained of migratory pain in his joints and muscles; he stated that the pain was not constant, but intermittent and migratory. (R. 198-99). Dr. Higdon reported essentially normal neurological examination findings, and he found no significant evidence for radicular disease of the cervical or lumbar spine. (R. 199-200).

Moges Sisay, M.D., a rheumatologist, examined Plaintiff in consultation in February 2003. (R. 206-10). Plaintiff complained of a two-year history of constant joint pain with muscle tenderness. (R. 206). Dr. Sisay documented multiple tender points, and diagnosed fibromyalgia; Dr. Sisay found no evidence of active inflammatory process or rheumatological problems. (R. 208). He ordered a bone scan, which was negative. (R. 215).

Plaintiff was seen by Michel Skaf, M.D., on May 17, 2003. (R. 217-19). Dr. Skaf's examination of Plaintiff revealed a normal gait and station, but difficulty walking on heels and toes, tandem walking, hopping, squatting, and rising from a squatting

position. (R. 218). Plaintiff exhibited pain in his lower back and knees, and a decreased range of motion because of the pain. (R. 218). Plaintiff's extremities were normal and all neurological testing was normal except for diminished hand grip strength. (R. 218). Dr. Skaf's impression was fibromyalgia and osteoarthritis that was extensive and not well controlled. (R. 219). Dr. Skaf opined that Plaintiff had severe symptoms that markedly affected his daily activities, and he was unable to carry more than three pounds in his left hand and unable to push or pull heavy objects. (R. 219).

A sleep study from April 2003 revealed severe obstructive sleep apnea. (R. 254). Plaintiff was prescribed a nasal continuous positive airway ("CPAP") mask, though he did not wear the mask frequently. (R. 253, 272). In December 2003, David Harris, M.D., noted that Plaintiff rarely wore his CPAP mask, even though his sleep was greatly improved[2] when he actually wore the mask. (R. 272). Dr. Harris concluded that Plaintiff's problem was primarily with compliance, as opposed to pure insomnia, and he declined to prescribe sleeping pills or other sedatives. (R. 272).

In September 2003, J. Butcher, Ph.D., administered the Minnesota Multiphasic Personality Inventory ("MMPI-2"). (R. 221-34). Plaintiff's validity profile suggested that he was somewhat defensive, while his clinical profile suggested that he reported a number of vague physical complaints and had a tendency to develop physical problems

---

[2]In fact, Dr. Harris reported that Plaintiff's sleep efficiency was at 54 percent when he was studied without a CPAP and his sleep efficiency improved to 91 percent with use of the CPAP. (R. 272). Dr. Harris warned Plaintiff and his wife of the risks of not wearing the CPAP and strongly suggested that Plaintiff make every effort to use it. (R. 272).

when he was under stress. (R. 223). There was a suggestion that Plaintiff was motivated by secondary gain.

Plaintiff periodically saw Dr. Wagner for a variety of complaints. (R. 235-66, 273-85). In February 2003, Dr. Wagner noted that Plaintiff's complaints of pain were out of proportion to the objective findings. (R. 242). In April 2004, Dr. Wagner advised Plaintiff to discontinue his alcohol consumption. (R. 279). Plaintiff admitted to continued alcohol use in September 2004. (R. 277). In November 2004, Plaintiff stated that he was not taking any medications because none of them helped; he reported that alcohol was the only thing that helped. (R. 275). His doctor observed that Plaintiff knew how to manipulate to get what he wanted. (R. 275).

In December 2004, Plaintiff called Dr. Wagner's office and requested an early refill of Lortab (a combination narcotic and analgesic); he stated that he had been taking increased doses of that medication because he was trying to use medication rather than alcohol to control his pain. (R. 273). Dr. Wagner refused to provide Plaintiff with an early refill of his medication. (R. 273). Plaintiff also indicated that he wanted Dr. Wagner to fill out a disability form, but only if he would say that Plaintiff was incapable of working. (R. 273).

At the request of the state agency, S. Rosh, M.D., and R. Fife, M.D., reviewed the record evidence in June 2003 and December 2003, respectively, and concluded that Plaintiff could perform light work that involved no climbing of ladders, ropes, or scaffolds, and only occasional balancing, stooping, kneeling, crouching, crawling, and

6

climbing of ramps and stairs. (R. 113-21). F. Kladder, Ph.D., and D. Unversaw, Ph.D., also reviewed the record evidence at the request of the state agency, and concluded that Plaintiff did not have a severe mental impairment. (R. 122-53).

In November 2004, Plaintiff sought mental health treatment due to depression. (R. 297). An examiner noted that Plaintiff's profile on an MMPI-2 test was "probably valid," though it likely reflected some exaggeration of symptoms. (R. 293). Plaintiff acknowledged drug and alcohol problems, which the examiner felt should be taken into consideration. (R. 294). Plaintiff attended four therapy sessions from November 2004 through January 2005; he complained of pain, and stated that nothing relieved his pain, except alcohol. (R. 286-91).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).

Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the Court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through the date of the decision, and Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 22).  The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had ten impairments that are classified as severe:  (1) status post two lumbar surgeries with myofascial cervical and lumbar pain; (2) L4/L5 herniated nucleus pulposus; (3) cervical small herniated nucleus pulposus C4/C5; (4) osteoarthritis/fibromyalgia; (5) status post left knee surgery; (6) depression; (7) anxiety; (8) somatization disorder; (9) alcohol abuse; and (10) polysubstance abuse mixing with alcohol.  (R. 22).  The ALJ also found three non-severe impairments:  (1) angina; (2) obstructive sleep apnea; and (3) remote history of marijuana use.  (R. 22).  The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 2).  Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of his limitations were not fully credible.  (R. 22).  Consequently, the ALJ concluded that Plaintiff retained the RFC for a limited range of light work that included lifting/carrying 20 pounds occasionally and ten pounds frequently; standing/walking up to six hours in an eight-hour workday with normal breaks; sitting up to six hours in an eight-hour workday; no climbing of ladders, ropes, or scaffolds; occasionally climbing ramps or stairs, occasionally balance, stoop, kneel, crouch, and crawl; and avoiding hazards such as heights and moving machinery.  Plaintiff also retained the ability to perform only simple routine tasks as a result of his

mental impairment. (R. 22). The ALJ determined that Plaintiff could not perform his past work. (R. 22). The ALJ opined that Plaintiff retained the RFC for a significant range of light work and that Plaintiff could perform a significant number of jobs in the regional economy. (R. 23). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 23).

## VI.  Issues

The Court concludes that Plaintiff has essentially raised two issues. The issues are as follows:

1. Whether the ALJ improperly concluded that Plaintiff's sleep apnea was not a severe impairment.

2. Whether the ALJ's credibility determination was improper.

**Issue 1:  Whether the ALJ improperly concluded that Plaintiff's sleep apnea was not a severe impairment.**

Plaintiff alleges that the ALJ "played doctor" in concluding that Plaintiff's sleep apnea was not a severe impairment. The Seventh Circuit has noted that an ALJ's decision will be reversed for playing doctor when "the ALJ fail[s] to address relevant evidence." *Dixon v. Massanari,* 270 F.3d 1171, 1177 (7th Cir. 2001); *see also Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996)(ALJs must not succumb to the temptation to play doctor and make their own independent medical findings).

Here, the ALJ clearly relied on the evidence from Dr. Harris that Plaintiff's sleep apnea problem was primarily with compliance from failure to wear his CPAP mask, as

opposed to pure insomnia, and that Dr. Harris had declined to prescribe sleeping pills or other sedatives. (R. 272). The evidence indicated that, if Plaintiff was compliant by using his CPAP mask, his sleep efficiency was 91 percent. (R. 272). There is no evidence in the way of medical tests or other objective findings to suggest that Plaintiff's sleep apnea was severe even with treatment. Hence, the ALJ did not ignore relevant medical evidence or make his own independent medical findings. The ALJ's decision concerning Plaintiff's sleep apnea was supported by substantial evidence and, therefore, must be affirmed.

**Issue 2:       Whether the ALJ's credibility determination was improper.**

Plaintiff also found fault with the ALJ's credibility determination. The Seventh Circuit has noted that an ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). However, whether the decision is wrong depends upon how closely the ALJ follows SSR 96-7p, the regulation promulgated by the Secretary to assess and report credibility issues. SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental

11

> impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

Social Security Ruling 96-7p(emphasis added; footnote omitted). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a

claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ's credibility determination, found at R. 19-20, is as follows:

After examining the claimant's assertions and all other pertinent evidence within the scope of Social Security Ruling 96-7p and 20 CFR, Subsections 404.1529 and 416.929, the undersigned Administrative Law Judge finds that the extent of the limitations and subjective complaints described by the claimant in regard to his impairments and the effects they have on his ability to perform basic work-related activities are exaggerated (as indicated by the two MMPI-2 results) and not supported by the medical evidence of record, particularly regarding the intensity and frequency of pain, and are, therefore, not credible.

The claimant has admitted to mixing Lortab with rum and coke (Ex. 17F) and stated that alcohol relieves his pain (Ex. 18F). The claimant's brain scan was normal (Ex. 13F) and the claimant's pain was described as non-specific by his psychiatrist Dr. Buxton (Ex. 15F). The claimant's compliance with recommended C-Pap usage has been very poor (Ex. 16F). The claimant's demeanor has been described as manipulative to get what he wants. On December 20, 2004, the claimant's treating physician Dr. Wagner noted that the claimant had been using alcohol to excess, had been taking more Lortab than prescribed, wanted early refill on his Lortab

> prescription, and only wanted Dr. Wagner to fill out a disability form if he would agree to say that the claimant was incapable of working (Ex. 17F). As indicated previously, MMPI-2 testing has shown that the claimant's complaints are somatic in nature, the claimant is not motivated for psychological change but in receiving secondary gain, complaints are exaggerated, and the claimant looks to drugs and alcohol for relief (Exs. 12F and 18F).
>
> Physical examination by a consulting physician on May 17, 2003 showed the claimant to have a normal gait, some difficulty with heel and toe walking, and slightly decreased range of motion of the knees and hips (Ex. 11F). None of the specialists have found significant bases for the severity of the claimant's complaints. Because of the discrepancies in the claimant's report of exaggerated symptoms and minimal objective findings, the claimant's credibility has been found to be only fair, at best.

(R. 19-20).

This analysis of Plaintiff's credibility is sound and completely in accordance with SSR 96-7p. The ALJ clearly addressed the disconnect between plaintiff's complaints and the objective medical evidence which did not support these complaints. Specifically, the fact that Plaintiff was mixing alcohol and prescription drugs, the fact that Dr. Buxton did not indicate any memory problems (R. 286-92), and the fact that Plaintiff had a normal brain scan was substantial evidence to support the ALJ's credibility determination concerning Plaintiff's and his wife's claim that he was suffering from memory problems. The ALJ also correctly noted that Plaintiff was noncompliant in using his CPAP unit, which is substantial evidence that his complaints of fatigue were not credible. More generally, the ALJ pointed to at least four pieces of medical evidence that suggested that Plaintiff was not credible, including evidence that he might be motivated by secondary gain, evidence that his complaints were exaggerated, evidence that he only wanted a

Case 3:06-cv-00098-RLY-WGH   Document 18   Filed 07/31/07   Page 15 of 15 PageID #: 79

disability form filled out if it said that he was disabled, and evidence that Plaintiff knew how to manipulate in order to get what he wanted. (R. 223-25, 273, 275, 293). This medical evidence is supportive of the ALJ's decision that Plaintiff was not credible. Clearly the ALJ's decision on credibility was, therefore, not patently wrong, and it must be affirmed.[3]

### VII.  Conclusion

The ALJ's findings concerning Plaintiff's sleep apnea are supported by substantial evidence. Additionally, the ALJ's credibility assessment is not patently wrong. The final decision of the Commissioner is, therefore, **AFFIRMED**.

**SO ORDERED** the 31st day of July 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Stephen Ray Dunn
DUNN & FRANCIS LAW OFFICES, PSC
srd_53@yahoo.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

---

[3]Plaintiff raised a secondary rationale for why the ALJ's credibility assessment was faulty. Plaintiff alleges that the ALJ failed to adequately address his wife's testimony. However, Plaintiff's wife's testimony simply mirrored his own, claiming that Plaintiff suffered from severe memory problems. An ALJ does not err by failing to address witness testimony when the testimony does not constitute a separate line of evidence but is merely a reiteration or corroboration of Plaintiff's testimony. *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996).

15